IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02401-PSF-MJW

BRIAN R. SHAFER,

Plaintiff,

v.

HECTOR A. RIOS, et al.,

Defendants.

---

**RECOMMENDATIONS ON
PLAINTIFF'S MOTION IN SUPPORT OF SUMMARY JUDGEMENT [sic]
IN FAVOR OF PRO SE PLAINTIFF (Docket No. 12)
and
DEFENDANTS' MOTION TO DISMISS (Docket No. 52)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Phillip S. Figa on March 1, 2006.  (Docket

No. 19).

Before the court for recommendation are the Plaintiff's Motion in Support of

Summary Judgement [sic] in Favor of Pro Se Plaintiff (Docket No. 12) and the

Defendants' Motion to Dismiss (Docket No. 52).  The court has considered the motions,

the responses thereto (Docket Nos. 53 and 62), and applicable Federal Rules of Civil

Procedure and case law.  The court now being fully informed makes the following

findings, conclusions, and recommendations.

**PLAINTIFF'S ALLEGATIONS**

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

In his Amended Complaint (Docket No. 25), the pro se plaintiff seeks declaratory, injunctive, and monetary relief based upon alleged denied, reckless, and negligent medical care while he was incarcerated at U.S.P. Florence.[1] Named as defendants are Hector Rios, Jr., the Warden of U.S.P. Florence, in his official and individual capacities; Dr. Calvin Polland, a doctor at that facility, in his official and individual capacities; and Scott Mead, who was the Health Services Administrator for the facility, in his individual capacity only. Plaintiff alleges the following in that pleading.

_____

[1]Plaintiff has since been released. According to the defendants, see Docket No. 52 at 3 n.4, plaintiff was released to a halfway house on June 12, 2006. In addition, the court notes that according to the Inmate Locator on the BOP's website, plaintiff was released on September 18, 2006. See www.bop.gov. See Docket No. 62 (motion in which plaintiff indicates that he was released from Fort Des Moines C.C.C., and he provides his new address).

3

Plaintiff was a Medical Care Level III inmate, but on March 17, 2005, he was sent to U.S.P. Florence, which is a Medical Care Level II facility. He has "moderate to severe sleep apnea, debilitating chronic lower back injury, and complex petit mall [sic] seizure disorder from a severe head injury 21 years prior, as well as numerous other health issues." (Docket No. 25 at 2). At the time of his arrival at that facility, "[h]e was receiving necessary prescriptions for his seizure disorder, Klonopin and Phenobarbital." (Docket No. 25 at 2).

Within days of his arrival, plaintiff developed a staph-infected wound on his right foot, and defendant Dr. Polland prescribed "numerous series of antibiotics." Some of the antibiotics, including Amoxicillin, were discontinued before they were completed, apparently due to adverse reactions. Plaintiff experienced an increase in his seizure activity during this time, which he later discovered were possible reactions to the stronger antibiotics, yet Dr. Polland never told plaintiff of that possibility. Defendant Mead and unknown staff told the plaintiff "that he could not continue to have the entire staff of U.S.P. Florence running to him, every time he had a seizure." (Docket No. 25 at 2-3).

Dr. Polland ordered the Klonopin and Phenobarbital withdrawn and implemented Topomax, over plaintiff's objection[2] and despite plaintiff's extensive history of drug reactions to seizure medications and recommendations by two physicians and one

---

[2]In an attachment to his original Complaint, plaintiff states that "Dr. Polland said if I had a reaction we would return to my original meds. **I agreed** he renigged. . . . I did not endorse the Topomax, Dr. Polland alleged I did, falsely . . . Dr. Polland said sometimes you have to experiment, trial and error, when **he renigged on our agreement**." (Docket No. 3 at 14).

4

neurologist to prescribe only Klonopin until a comprehensive seizure study was done at the University of California San Francisco Medical Center.  Dr. Polland told plaintiff that if plaintiff experienced any reaction, plaintiff would be switched back to Klonopin because of his history.

Within days of the start of the Topamax, plaintiff was unable to eat, and he lost 38 pounds in three weeks.  Plaintiff repeatedly stated his complaints to Dr. Polland and Mead, including the weight loss, kidney pain, and inability to urinate, but Dr. Polland advised plaintiff to continue the Topamax as the reaction should subside.  On or about April 20, 3005, plaintiff refused all medication because he feared permanent damage or death and because he "was absent proper and adequate medical advice by defendant Polland."  Dr. Polland refused to restore the Klonopin as promised, and he refused to order specialized treatment or evaluation "unless plaintiff continued to experiment with seizure medications per bureau policy."  (Docket No. 25 at 3).

On or about June 20, 2005, plaintiff suffered a neck injury during a seizure in his cell.  Mead continually promised to schedule an appointment but failed to do so.

At some point Dr. Polland mistakenly ordered an MRI of the plaintiff's spine instead of his scull.  Dr. Polland fraudulently recorded plaintiff's willingness to start new medications, either in the plaintiff's chart and/or to an investigator of plaintiff's grievance.  Plaintiff had argued his case against any medication changes, only to have Dr. Polland tell him that plaintiff had no choice in the matter.

"Plaintiff asked Defendant Rios to remedy his denied medical, including a plea for transfer to a federal medical center as recommended in plaintiff's sentencing

judgement [sic]." (Docket No. 25 at 4).

On or about November 15, 2005, Dr. Polland diagnosed plaintiff's staph infection as being in the lymph nodes and prescribed Cephalaxin.  That afternoon plaintiff had an apparent drug reaction, namely, shortness of breath, flushed appearance, swelling of joints, itching, and dizziness.  The following day, Dr. Polland ordered another antibiotic, "the last option by Bureau policy," since the plaintiff had allergic reactions to Amoxicillin and Cephalaxin since his initial diagnosis in March.

As of March 9, 2006, plaintiff was still not being medicated for seizures.

Plaintiff alleges deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, based upon: (1) Mead's failure to effect proper and adequate medical treatment and evaluation of plaintiff's seizure disorder and his knowledge that plaintiff had no intention or willingness to start new medications to control his seizures; (2) Dr. Polland's failure to provide adequate and proper medical treatment, evaluation, and medication without risking further serious injury or harm, as well as making false statements, in regard to plaintiff's seizure disorder; and (3) Rios' failure to correct the unconstitutional acts of Dr. Polland and Mead.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the defendants were served and before he filed his Amended Complaint, plaintiff filed his Motion in Support of Summary Judgement [sic] in Favor of Pro Se Plaintiff.  (Docket No. 12).  In that motion, plaintiff raises many of the allegations raised in his Amended Complaint, including the following.   According to the plaintiff, "[t]his action meets the obective [sic] and subjective prong of deliberate indifference set forth

by the Supreme Court in Estelle v. Gamble, 429 U.S. 97 (1976) the standard for what treatment rises to cruel and unusual punishment." (Docket No. 12 at 1).  Dr. Polland immediately received documents from plaintiff's medical practitioners and was made aware of the numerous epileptic drug reactions, "yet he chose the route of deliberate indifference, a wreckless [sic] disregard to [plaintiff's] health." (Docket No. 12 at 2).  In addition, "[f]or a staph infection he gave numerous prescriptions that had specific warnings regarding seizure activity.  Immediately [plaintiff's] seizure activity increased. He responded by changing plaintiff's seizure medications. [Plaintiff] was told [he] had no choice in the matter, after [plaintiff] voiced strong opposition." (Docket No. 12 at 2). Although Dr. Pollard told plaintiff he would be returned to Klonopin and Phenobaritol if plaintiff reacted, and within a week plaintiff began telling Dr. Polland and Mead of the side effect reactions, plaintiff was told "to continue on it, it should mellow out." (Docket No. 12 at 2).  Two weeks later, plaintiff exhibited drastic weight loss, increased frequent urination nearly to incontinence, inability to eat, severe diarrhea, and some vomiting. Plaintiff submitted complaints almost daily, and he

> was forced to make a critical decision, that should not have been [his] to make.  Which medication was causing [him] such drastic drug reactions? Since Dr. Polland chose to ignore [him], [plaintiff] stopped all medications. [Plaintiff] felt that [he] would lose/permanently damage internal organs or die if [he] continued to follow his instructions.  Dr. Polland's stance following [plaintiff's] April 20[th] decision, was: he would only order neurological/seizure studies if [plaintiff] took the Bureau approved seizure medications on an experimental (or trial & error) basis. [Plaintiff] countered, [his] disorder does not fit usual parameters, he concurred, but added, "that doesn't mean I'll put you back on Klonopin, I won't do it." That discussion shows that Dr. Polland drew the inference.  A prison official does not act in a deliberate indifferent manner unless that official knows of an disregards an excessive risk to inmate health or safety; he

> acted with a sufficiently culpable state of mind as he was fully aware of
> the facts of my disorder, from which the inference could be drawn that a
> substantial risk of serious harm did exist. . . .

(Docket No. 12 at 3).  Attached to plaintiff's motion are copies of patient product

information sheets concerning medications plaintiff has taken.  (Docket No. 12 at 5-10).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment shall be granted "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  "A party seeking summary judgment bears the

initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, interrogatories, and admissions

on file together with affidavits, if any, which it believes demonstrate the absence of

genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of

Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir.

1992)).  "Once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in the complaint, but must respond with

specific facts showing the existence of a genuine factual issue to be tried. . . .  These

facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c),

except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149

F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .

**Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient** . . . as are conclusory assertions that factual disputes exist." Id. (emphasis added); Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

This court agrees with the defendants' assertion in their Response (Docket No. 53) that the plaintiff has not provided any admissible evidence to establish the factual basis for his allegations. Furthermore, as discussed below, the plaintiff has failed to show that he is entitled to judgment as a matter of law. For these reasons, it is recommended that the plaintiff's motion be denied.

## DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) plaintiff's claims against Rios and Mead

in their official capacities are barred by sovereign immunity; (2) plaintiff has failed to

exhaust his administrative remedies; (3) defendants are entitled to qualified immunity

as plaintiff has failed to demonstrate that defendants have been deliberately indifferent

to his care; and (4) Rios may not be held vicariously liable for the actions of his

subordinates.

> Rule 12(b)(1):
>
> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp. 2d

1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all factual allegations in the complaint as true and resolve all reasonable

inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124,

1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A

case should not be dismissed for failure to state a claim unless the court determines

beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon

v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46

(1957).

### Official Capacity Claims and Claims for Injunctive and Declaratory Relief

Defendants first assert that the plaintiff's claims against defendants Rios and

Mead in their official capacities as employees of the Federal Bureau of Prisons are

barred because absent a waiver of the government's sovereign immunity, officials and

employees of federal agencies may not be sued.  The court notes, however, that

plaintiff has brought official capacity claims against defendants Rios and Polland, not

defendant Mead.  In any event,  "[a] motion to dismiss based on sovereign immunity is

treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule

12(b)(1)."  Neiberger v. Hawkins, 150 F. Supp.2d 1118, 1120 (D. Colo. 2001).  "[I]t is

well established that federal employees sued in their official capacities are immune

from a Bivens suit."  Hill v. Pugh, 75 Fed. Appx. 715, *3 (10th Cir. Sept. 11, 2003) (citing

Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002)); see Cook v. Federal Bureau of

Prisons, 2006 WL 898111 (D. Colo. Apr. 5, 2006) ("[A] Bivens claim may only be

brought against a federal agent in his or her individual capacity; not against a federal

agency or agents in their official capacities.").  Therefore, the claims for damages

against defendants Rios and Polland in their official capacities should be dismissed for

lack of subject matter jurisdiction.

In his Amended Complaint, as part of the relief requested, plaintiff seeks the issuance of injunctive relief, namely, "releasing plaintiff immediately to seek adequate and proper medical care . . . ." "Sovereign immunity is . . . not a bar to [plaintiff's] action for injunctive relief against [defendants]." Simmat v. United States Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005). Nevertheless, as noted above, plaintiff has been released from U.S.P. Florence. (See Docket No. 52 at 3 n.4). "[A]" party cannot maintain an action for declaratory or injunctive relief unless a substantial likelihood of being injured in the future is demonstrated." Smith v. Torres 2006 WL 2621666 (D. Colo. Sept. 12, 2006) (citing Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1990)). Given plaintiff's release, the entry of injunctive or declaratory relief would have no effect on the defendants' behavior. It is thus recommended that the plaintiff's claims for such relief be denied as moot.

**Exhaustion**

Defendants next assert that the plaintiff has failed to exhaust his administrative remedies as to all claims. More specifically, they contend that the plaintiff has not exhausted his administrative remedies as to his claims concerning the alleged failures of Rios and Mead to provide medical care or ensure that Dr. Polland was providing proper medical care to him. They note that in the administrative remedy documents plaintiff attached to his original Complaint, there is no mention of the acts or omissions of Rios or Mead. Instead, in his grievances, his complaints center on the acts or omissions of Dr. Polland concerning the medications being or not being prescribed for

12

plaintiff's seizures as well as further medical treatment that is necessary.  Defendants

contend that plaintiff has not provided any documentation in his Amended Complaint as

to administrative claims involving Mead or Rios.  Accordingly, defendants assert that

this court lacks jurisdiction to consider plaintiff's claims, and his Amended Complaint

should be dismissed without prejudice.

The Prison Litigation Reform Act of 1995 ("PLRA"), *inter alia*, amended 42

U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as

are available" before suing over prison conditions.  This exhaustion requirement "is

mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v.

Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section

"1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "Even

when the prisoner seeks relief not available in grievance proceedings, notably money

damages, exhaustion is a prerequisite to suit."  Id. at 524 (citing Booth v. Churner, 532

U.S. 731, 741 (2001)).  The Supreme Court has stated: "[W]e stress the point . . . that

we will not read futility or other exceptions into [the PLRA's] statutory exhaustion

requirement."  Booth, 532 U.S. at 741, n.6.  "In *Booth*, the Supreme Court explained

that one of the purposes of the exhaustion requirement is to force an inmate to go

through the administrative process which in turn might afford prison officials the

opportunity to take some corrective action that would preclude litigation."  Beaudry, 331

F.3d at 1167.

"[F]ederal prisoners suing under *Bivens* . . . must first exhaust inmate grievance

procedure . . . ."  Porter v. Nussle, 534 U.S. at 524.  The Bureau of Prisons has a four-step procedure for prisoner grievances.  First, the prisoner is required to seek informal resolution of his complaint.  28 C.F.R. § 542.13.  If the complaint is not resolved informally, the prisoner should then address his complaint to the Warden through a written Administrative Remedy Request, on a "BP-9" form, 28 C.F.R. §§ 542.13, 542.14, which must be submitted no later than "20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  If the prisoner is dissatisfied with the response from the Warden, the prisoner then submits an Appeal to the appropriate Regional Director on a "BP-10" form, which must be submitted to the Regional Director no later than "20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  If dissatisfied with the Regional Director's response, the prisoner then submits an Appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington, D.C., on a "BP-11" form.  See 28 C.F.R. § 542.15.  That form must be submitted no later than "30 calendar days of the date the Regional Director signed the response."  28 C.F.R. § 542.15(a).

"The fact that [plaintiff] is not incarcerated is of no moment in this context as the applicable regulations state that the Administrative Remedy Program applies to former inmates for issues that arose during their confinement."  Covell v. Scibana, 21 Fed. Appx. 291, 2001 WL 1299007, *2 (6th Cir. Aug. 9, 2001) (citing 28 C.F.R. § 542.10). See Parrott v. Gehrke, 103 Fed. Appx. 908 (7th Cir. June 24, 2004) (Plaintiff was a former BOP inmate who was challenging an incident that occurred during his confinement in a BOP facility, so he was required to pursue the BOP's administrative

14

remedies to pursue his claim in federal court.); Maree-Bey v. Nash, 53 Fed. Appx. 240

(4th Cir. Dec. 16, 2002) ("[T]he applicable regulations apply 'to former inmates for

issues that arose during their confinement." 28 C.F.R. § 542.10(b) (2002).  Therefore,

[plaintiff] must complete the exhaustion process before pursuing his claim in federal

court."); Bloch v. Samuels, 2006 WL 2239016 (S.D. Tex. Aug. 3, 2006) (Administrative

Remedy Program applies to former inmates for issues that arose during their

confinement pursuant to 28 C.F.R. § 542.10(b)).   But see Dennison v. Prison Health

Servs., 2001 WL 761218 (D. Maine July 6, 2001) (exhaustion requirement found to be

no longer applicable after plaintiff's release, which was after the action was

commenced).

        "When an inmate completes all of the administrative steps required by prison

regulations, '[a] showing of exhaustion . . . [is] dependent upon insight into the

administrative claim and its relationship with the federal suit.'" Kikumura v. Osagie, 461

F.3d 1269, 1282 (10th Cir. 2006) (quoting Steele v. Federal Bureau of Prisons, 355 F.3d

1204, 1210 (10th Cir. 2003)).  "There is no doubt that '[a] litigant's failure to raise issues

during an administrative appeal can constitute a failure to exhaust administrative

remedies.'" Id. (quoting Kikumura v. Hurley, 242 F.3d 950, 956 (10th Cir. 2001)).

"Failure to file a grievance against the person a prisoner ultimately seeks to sue may

constitute a failure to exhaust administrative remedies under the PLRA." Wallin v. Hill,

2005 WL 1924663, at *7 (D. Colo. Aug. 10, 2005) (Miller, J.) (citing Curry v. Scott, 249

F.3d 493, 505 (6th Cir. 2001) (because he was never mentioned in grievance forms,

there was no exhaustion of remedies against prison guard who allegedly failed to

intervene in second guard's assault on prisoners)), aff'd sub nom. Wallin v. Dycus,

2006 WL 2590493 (10th Cir. Sept. 11, 2006).  See Lopez v. Ortiz, 2005 WL 2304733

(D. Colo. Sept. 21, 2005) (Nottingham, J.) (CDOC inmate's grievance did not mention

two defendants or provide sufficient information to put those defendants on notice

regarding his claim.  Court found that the inmate did not exhaust his administrative

remedies with respect to those two defendants).  However, "a grievance satisfies §

1997e(a)'s exhaustion requirement so long as it provides prison officials with enough

information to investigate and address the inmate's complaint internally."  Kikumura v.

Osagie, 461 F.3d at 1285.

       This court finds that the plaintiff did not exhaust his administrative remedies

against defendants Rios under this standard.  Plaintiff made no specific mention of Rios

and Mead in any of the steps of the grievance procedure; he merely made specific

reference to Dr. Polland's treatment.  Mead's purported involvement, however, is

similar to the claim plaintiff makes against defendant Polland.  Plaintiff claims in this

action that "[t]he failure of defendant Mead to effect proper and adequate medical

treatment and evaluation of plaintiff's seizure disorder and injuries sustained, and his

knowledge that plaintiff had no intention or, 'willingness to start new medications to

control his seizures.,' constitute deliberate indifference to the plaintiff's serious medical

needs in violation of the Eighth Amendment to the United States Constitution."  (Docket

No. 25 at 5).  It appears, however, that the plaintiff attributes liability to defendants Rios

based merely upon his supervisory role and his review of the plaintiff's grievance at

one of the steps of the administrative process.  Plaintiff did not put prison officials on

16

notice of his claim against Rios.  Therefore, this court finds that the plaintiff failed to

exhaust his claim against this defendant.

The Tenth Circuit has "held that the PLRA's section 1997e(a) presents a 'total

exhaustion requirement' such that 'the presence of unexhausted claims in [a prisoner]'s

complaint require[s] [a] district court to dismiss his action in its entirety without

prejudice." Price v. Shinn, 2006 WL 1123787, *1 (10th Cir. Apr. 28, 2006) (citing Ross

v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004)), cert. denied, 127 S. Ct.

223 (2006).  If non-exhaustion were the only basis for dismissal in the instant case, this

court would recommend that such dismissal be without prejudice pursuant to 42 U.S.C.

§ 1997e(a).  As discussed below, however, this court finds that defendants are entitled

to qualified immunity.  Therefore, the recommended dismissal would be with prejudice.

**Qualified Immunity**

Defendants next assert that they are entitled to qualified immunity.  They

contend that the plaintiff's

> claims against the defendants concern the proper means of diagnosing
> his ailment and its treatment with certain anti-seizure medications.
> [Plaintiff] disagrees with Dr. Polland as to which medication is best suited
> to ameliorate his seizure activity.  He also seeks additional medical
> testing in the form of a seizure study by a private medical provider. . . .
> On the facts of his allegations, [plaintiff has failed to demonstrate that Dr.
> Polland (or the other defendants) have been deliberately indifferent to his
> care.  He is receiving medical care, albeit not what he would choose
> based on his lay opinion. . . .  Accordingly, [plaintiff] has failed to establish
> that the defendants violated clearly established law in their care and
> treatment of his medical problems.

(Docket No. 52 at 9-10) (footnotes and citations omitted).

When a defendant raises a qualified immunity defense, the plaintiff "bears the

burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001). "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" Id. (footnote omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted). "[O]fficials can still be on notice that their conduct violated established law even in novel factual circumstances. . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with 'materially similar' facts." Id. at 741.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the [defendant's] conduct would violate the Constitution, the [defendant] should not be subject to liability or,

indeed, even the burdens of litigation." Id.

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Id. at 197. Based upon the findings below, this court finds that the plaintiff has not alleged facts that show that defendants' conduct violated the Eighth Amendment.

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 105-06. "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle, 429 U.S. at 106), cert. denied, 127 S. Ct. 131 (2006). "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . . The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, *and* [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about

19

and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

The question here is whether the plaintiff's allegations, if true, state a claim under the Eighth Amendment.  Kikumura v. Osagie, 461 F.3d at 1291.  Reading plaintiff's Amended Complaint liberally, accepting all factual allegations in the pleading as true, and resolving all reasonable inferences in plaintiff's favor, this court finds that the plaintiff's own allegations show that Dr. Polland was not deliberately indifferent to plaintiff's medical needs.  Dr. Polland promptly treated plaintiff's staph infection.  While plaintiff apparently had adverse reactions to some antibiotics that Polland prescribed, such reactions do not constitute deliberate indifference, and Polland apparently promptly changed plaintiff's antibiotic course once there was a reaction.  Furthermore, defendants did not refuse to provide plaintiff medical attention.  Their refusal to provide a particular course of treatment preferred by the plaintiff does not constitute deliberate indifference.  See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999).  While plaintiff allegedly had adverse reactions, according to the plaintiff, the doctor wanted the plaintiff to give the drugs more time to level off.  In addition, while plaintiff claims his seizures went untreated, his own averments show that he unilaterally decided to refuse his medications.  Such refusal does not constitute an Eighth Amendment violation by the defendants.  See Carter v. Troutt, 175 Fed. Appx. 950 (10th Cir. Apr. 7, 2006) (No Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the prisoner, prisoner missed his follow-up appointment for treatment, and he refused to be

examined unless he was prescribed the pain medication he wanted.  Doctor monitored

prisoner and his health situation and provided ongoing-care, albeit not the care the

prisoner desired); Mosley v. Snider, 10 Fed. Appx. 663 (10th Cir. Mar. 22, 2001) (Inmate

did not state an Eighth Amendment claim based upon his allegations that his

prescription was discontinued because facility physician determined it was no longer

needed, a different medication was prescribed but the inmate refused to accept it, and

the inmate then missed his next three medical appointments.); Olson v. Coleman, 993

F.2d 1551 (Table) (10th Cir. Apr. 28, 1993) (Plaintiff's claims of denial of medical care

must fail in light of testimony that plaintiff refused medical care while at the correctional

facility.); Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992) (No merit to arguments

concerning defendants' alleged deliberate indifference to medical needs because

plaintiff's belief that he needed additional medication, other than that prescribed by the

treating physician, as well as his contention that he was denied treatment by a

specialist is insufficient to establish a constitutional violation.).  See also Self v. Crum,

439 F.3d at 1232 ("[T]he subjective component is not satisfied, absent an extraordinary

degree of neglect, where a doctor merely exercises his considered medical judgment.

Matters that traditionally fall within the scope of medical judgment are such decisions

as to whether to consult a specialist or undertake additional medical testing.").

Furthermore, "[i]t follows that an inmate does not have a constitutional right to

early release from confinement based on his desire to procure the medical treatment of

his choice." Troutt v. Correctional Healthcare Management, Inc., 2006 WL 2372987

(W.D. Okla. Aug. 14, 2006).

In sum, this court finds that the plaintiff has failed to state a claim of constitutional dimension.  Based on this finding, it is unnecessary to address defendants' final contention that defendant Rios may not be held vicariously liable for the acts of subordinates.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Plaintiff's Motion in Support of Summary Judgement [sic] in Favor of Pro Se Plaintiff (Docket No. 12) be denied.  It is further

**RECOMMENDED** that the Defendants' Motion to Dismiss (Docket No. 52) be granted and that the Amended Complaint be dismissed with prejudice.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT:

Dated:  December 5, 2006          s/ Michael J. Watanabe
        Denver, Colorado          Michael J. Watanabe
                                  United States Magistrate Judge